# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### COLUMBIA DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>  v.<br><br>AARON SHEALY, TYLER TURNER,<br>and DUTCH FORK INSURANCE<br>GROUP, LLC,<br><br>        Defendants. | Civil Action No.  3:17-2511-MBS<br><br><br>**COMPLAINT FOR INJUNCTIVE AND<br>OTHER RELIEF** |

Plaintiff Allstate Insurance Company ("Allstate") alleges as follows for its Complaint for Injunctive and Other Relief against Defendants Aaron Shealy ("Shealy"), Tyler Turner ("Turner"), and Dutch Fork Insurance Group, LLC ("Dutch Fork," or, collectively with Shealy and Turner, "Defendants"):

## THE PARTIES AND RELEVANT ENTITIES

1.    Allstate is an Illinois corporation with its principal place of business located in Northbrook, Illinois.

2.    Shealy is a citizen of the State of South Carolina and resides in the State of South Carolina.

3.    Turner is a citizen of the State of South Carolina and resides in the State of South Carolina.

4.    Upon information and belief, Dutch Fork is a South Carolina limited liability company with its principal place of business located in Irmo, Richland County, South Carolina. Dutch Fork is an Allstate competitor.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this dispute pursuant to 18 U.S.C.

§ 1836(c) and 28 U.S.C. § 1331 because Allstate's claims against Defendants under the federal

Defend Trade Secrets Act, 18 U.S.C. § § 1836, *et seq.*, raise a federal question. Allstate's

remaining claims fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367

because the claims are so related to the federal question that they form part of the same case or

controversy. Alternatively, this Court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a),

because this action and controversy is between citizens of different states and exceeds the value

of $75,000, exclusive of interest and costs.

6.     This Court has personal jurisdiction over Defendants because Defendants are

citizens and residents of the State of South Carolina. Venue is proper in the United States District

Court for the District of South Carolina, Columbia Division, pursuant to 28 U.S.C. § 1391(b),

because one or more Defendants reside in this District and a substantial part of the events giving

rise to Allstate's claims occurred in this District.

## NATURE OF THE ACTION

7.     This action is the result of Shealy and Turner conspiring to break certain promises

they made to Allstate, and Dutch Fork knowingly assisting Shealy and Turner in their violations.

8.     Shealy, acting in his capacity as an authorized agent of the Aaron Shealy Agency,

executed an Allstate R3001C Exclusive Agency Agreement ("EA Agreement") with Allstate

effective July 1, 2009. The EA Agreement, attached as Exhibit 1, allowed Shealy to become an

Allstate Exclusive Agent ("EA"), to receive Allstate confidential information, to sell Allstate

insurance products and services, and to receive commissions for the sale of Allstate products and

services.

2

9.      On or about August 1, 2016, while still acting as an Allstate EA and in violation of the terms of his EA Agreement, Shealy surreptitiously launched Dutch Fork, an independent insurance agency that sells products in direct competition with Allstate.

10.     Three months later, on or about November 1, 2016, Shealy sold his economic interest in the customers he serviced on behalf of Allstate ("Book of Business") to an individual named Myron Coldiron ("Coldiron"), thereby terminating his relationship with Allstate. Shealy did not disclose the existence of Dutch Fork during that transaction. In fact, Shealy lied to Coldiron and Allstate by claiming that he was leaving the insurance industry to open a brush cutting service and a car wash.

11.     Turner, who had been employed as a Licensed Service Provider ("LSP") for Shealy at Shealy's Allstate Exclusive Agency, chose to work for Coldiron after Coldiron acquired Shealy's Book of Business.

12.     On or about October 21, 2016, in anticipation of his employment with Coldiron, Turner executed a Confidentiality and Non-Competition Agreement ("Non-Competition Agreement") with Allstate, attached as Exhibit 2. The Non-Competition Agreement allowed Turner to assume employment at Coldiron's Allstate Exclusive Agency and to assist Coldiron's Allstate Exclusive Agency in marketing and selling Allstate products.

13.     In late 2016, Shealy began operating Dutch Fork at a location less than two miles away from his Allstate Exclusive Agency.

14.     Turner was working for Coldiron when Shealy opened Dutch Fork. However, Turner subsequently terminated his LSP Agreement on November 21, 2017 and began working for Shealy in early January 2017.

15.     Upon information and belief, prior to leaving his job at Coldiron's Allstate Exclusive Agency, Turner removed certain confidential information belonging to Allstate from his computer. He then used a software program to erase all evidence of his theft of the confidential information.

16.     Since Turner's departure from Coldiron's Allstate Exclusive Agency, Allstate has been losing business at a rate that is far out of line with average cancellation rates.

17.     Shealy has admitted to Coldiron and Allstate that these losses are due to his direct solicitation of Allstate customers, and that he continues to solicit customers of Coldiron's Allstate Exclusive Agency.

18.     Under the EA Agreement and the Non-Competition Agreement (collectively, the "Allstate Agreements"), Shealy and Turner: (a) acknowledged that they would be granted access to Allstate confidential information and that Allstate confidential information is the property of Allstate; (b) agreed to not use Allstate confidential information for their own benefit or disclose Allstate confidential information to third parties; (c) promised to not solicit business for any other company, agent, or broker for one year after the Allstate Agreements terminated; and (d) promised to return all confidential information to Allstate upon the termination of the Allstate Agreements.

19.     Allstate trusted Shealy and Turner to abide by the terms of the Allstate Agreements, and to only use Allstate confidential information for the benefit of Allstate.

20.     However, upon information and belief, and in direct violation of the covenants contained in the Allstate Agreements, Shealy and Turner have conspired to take Allstate confidential information and trade secrets. Shealy and Turner have also used Allstate confidential information and trade secrets to solicit Allstate customers in order to build Dutch

Fork's business. Moreover, Dutch Fork is allowing, encouraging, aiding, and/or inducing Shealy and Turner to breach their Allstate Agreements and use Allstate confidential information and trade secrets on behalf of Dutch Fork.

21.     Shealy's and Turner's actions are clear violations of their Allstate Agreements and common law. Defendants' conduct also constitutes the misappropriation of trade secrets, unfair trade practices, and tortious interference with Allstate's contractual relationships.

22.     As a result of Defendants' actions, Allstate has lost several hundred thousand dollars in revenue and is continuing to lose significant revenue every month.

23.     Defendants' actions threaten serious and continuing irreparable harm to Allstate. As a result, injunctive relief is necessary and appropriate to prevent further injury to Allstate.

24.     Consequently, Allstate now brings suit against Defendants for breach of contract, misappropriation of trade secrets, unfair trade practices, and tortious interference with Allstate's contracts with Shealy and Turner. In doing so, Allstate requests that this Court enter an order: (1) compelling Defendants to return all Allstate property, including all Allstate confidential information, in their custody, possession or control to Allstate; (2) enjoining Defendants, and anyone acting in concert with them, from using, possessing or having access to Allstate confidential information and property; (3) enjoining Defendants, and anyone acting in concert with them, from soliciting Allstate customers; (4) awarding Allstate compensatory and exemplary damages for Defendants' intentional acts; and (5) awarding Allstate its reasonable attorneys' fees as provided for under the Allstate Agreements, as well as applicable South Carolina and federal law.

## BACKGROUND

### Allstate's Business and Hiring of Independent Exclusive Agents

25.     Allstate is one of the nation's leading providers of insurance products to individuals and businesses.  Among other things, Allstate provides automobile insurance, property and casualty insurance, and life insurance to individuals and businesses.

26.     In addition to providing these products directly, Allstate appoints independent Exclusive Agents ("EAs") through its Exclusive Agency Program to sell Allstate products.

27.     Allstate rigorously screens its EAs to ensure that the agents are qualified to represent and sell Allstate products, have the proper tools and facilities to analyze and meet customer needs, and can furnish customers with appropriate insurance solutions.

28.     Allstate EAs are authorized to employ LSPs to assist the EAs in performing services under the Allstate Agreements.

29.     Allstate expends substantial resources advertising, marketing and promoting its products.

30.     The EAs and their LSPs benefit, directly and indirectly, from Allstate's advertising, marketing and promotional efforts, as well as from Allstate's goodwill, reputation and name recognition.  These efforts and expenditures allow the EAs and their LSPs to develop and cultivate customer accounts and relationships on behalf of Allstate.

31.     Accordingly, Allstate relies heavily upon repeat business and renewal of policies to maintain its competitive advantage in the highly competitive insurance industry.  Maintaining goodwill and a solid business reputation with its customers and insureds is a critical component of Allstate's success.  Indeed, because Allstate's business is a service business, the relationship that each EA and its LSPs have with Allstate customers is highly dependent on the attention and

excellent service given to the customers on an ongoing basis, and the continued trust the customers place in Allstate as a leading provider of such services.

## Protection of Allstate Confidential Information

32.    Allstate and its customers entrust Allstate EAs and the EAs' LSPs to safeguard and protect their private information, which includes information relating to, among other things, their personal data, date of birth, social security numbers, types of policies, amount of insurance, premium amounts, description and location of assets and property, claims histories, insurance needs, pricing information, and other insurance coverage information, from unauthorized use or disclosure. Access to confidential information regarding Allstate customers was provided to or gained by Shealy because he was an EA for Allstate, and to Turner because he was an LSP. Neither Shealy nor Turner had access to confidential information about Allstate customers before entering into their respective relationships with Allstate.

33.    Allstate protects its information (described in paragraph 32) by, among other things: limiting the disclosure and use of this information to only the EAs and LSPs who need this information to sell Allstate products; educating the EAs and LSPs about the requirement and necessity of keeping this information confidential; restricting access to this information by restricting access to computer networks and requiring the use of passwords to access the information; and, as discussed below, requiring the EAs and their LSPs to execute written agreements that protect against the misuse and improper disclosure of Allstate confidential information.

34.    Consequently, all EAs and their LSPs, pursuant to their Allstate Agreements and while performing services under the Allstate Agreements, acknowledge that they will have access to Allstate confidential information, promise to not disclose confidential information to

anyone not authorized to receive it, and confirm that they will not use confidential information for their own benefit or for any improper purpose.

35.     EAs and LSPs agree, upon termination of their relationship with Allstate, to continue treating Allstate confidential information as confidential, not disclose, either directly or indirectly, Allstate confidential information to any third party, and immediately return all Allstate confidential information to Allstate.

36.     Hence, Allstate's confidential and proprietary information is not available to the general public and is closely guarded by Allstate.   Allstate keeps such information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive insurance business. The time, expense, and effort that goes into the development of Allstate confidential and proprietary information is such that the independent development of identical or comparable materials by Allstate competitors would be extraordinarily difficult and expensive.

**Defendants Enter Into Allstate Agreements to Solicit and Sell Allstate Products**

37.     After proceeding through Allstate's rigorous screening process, Shealy became an EA on or about July 1, 2009, pursuant to the terms of his EA Agreement. (*See* Ex. 1 at 1.)

38.     Shealy operated an Exclusive Allstate Agency at 10071 Broad River Road, Suite B, in Irmo, South Carolina from July 2009 through October 31, 2016.

39.     On or about October 21, 2016, Turner, who had been employed by Shealy as an LSP, executed a Non-Competition Agreement with Allstate that enabled him to become an LSP for Coldiron beginning November 1, 2016.

40.     In the regular course of its business, Allstate maintains EA Agreements and Non-Competition Agreements in its files and regularly relies on those agreements.

41.     Under the EA Agreement, Shealy acknowledged that the following is Allstate "confidential information" and property:

> business plans of [Allstate]; information regarding the names, addresses, and ages of policyholders policyholders of [Allstate]; types of policies; amounts of insurance; premium amounts; the renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by [Allstate] as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of [Allstate] that is not otherwise lawfully available to the public.

(Ex. 1 at § IV(D).)

42.     Meanwhile, under the Non-Competition Agreement, Turner acknowledged that the following is Allstate "confidential information" and property:

> business plans of [Allstate]; information regarding the names, addresses, and ages of policyholders or prospective policyholders of [Allstate]; types of polices; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of [Allstate] that is not otherwise lawfully available to the public.

(Ex. 2 at ¶ 3.)

43.     Pursuant to Section IV(D) of the EA Agreement and Paragraph 4 of the Non-Competition Agreement, Shealy and Turner agreed that they would not, at any time or in any manner, directly or indirectly, use Allstate confidential information for any purpose other than to carry out the provisions of their Allstate Agreements. (Ex. 1 at § IV(D); Ex. 2 at ¶ 4.)

44.     Pursuant to Section IV(D) of the EA Agreement and Paragraph 5 of the Non-Competition Agreement, Shealy and Turner acknowledged that all confidential information they were provided and had access to through Allstate would at all times remain Allstate property. (Ex. 1 at §§ IV(D); Ex. 2 at ¶ 5.)

45.     Pursuant to Sections IV(B), IV(C), and  XVIII(B) of the EA Agreement and Paragraphs 4 and 5 of the Non-Competition Agreement, Shealy and Turner promised to maintain the confidentiality of Allstate confidential information both during and after their respective relationships with Allstate terminated, as well as to return all Allstate confidential information and property to Allstate when their relationships with Allstate terminated. (Ex. 1 at §§ IV(B)-(C), XVIII(B); Ex. 2 at ¶¶ 4-5.)

46.     Pursuant to Section XVIII(D) of the EA Agreement and Paragraph 7 of the Non-Competition Agreement, Shealy and Turner agreed that, for a period of one year following termination of their Allstate Agreements, they would not solicit the purchase of products competitive with those sold by Allstate from any customer to whom they sold Allstate products or whose identity they discovered a result of having access to Allstate confidential information. (Ex. 1 at § XVIII(D); Ex. 2 at ¶ 7.)

47.     Shealy and Turner recognized that a breach of any of the above provisions would "cause irreparable damage to [Allstate's] business and that such damage will be difficult or impossible to measure."  (Ex. 1 at §§ IV(F), XVIII(F); Ex. 2 at ¶ 10.)

48.     Consequently, Shealy and Turner agreed that if they breached any of their obligations under the Allstate Agreements, then "in addition to other rights and remedies," Allstate "will be immediately entitled to an order granting injunctive relief from any court of competent jurisdiction." (*Id.*)

49.     Shealy and Turner also agreed that Allstate would be "entitled to an award of reasonable attorneys' fees in the event that [Allstate] is successful in an application for injunctive relief or in an action based upon the breach" of any of the terms set forth in their Allstate Agreements.  (*Id.*)

## Shealy and Turner Breach Their Allstate Agreements

50.     Unbeknownst to Allstate, on or about August 1, 2016, and while still working as an Allstate EA, Shealy established the independent insurance agency Dutch Fork, as evidenced by the printout from the South Carolina Department of Insurance attached as Exhibit 3.

51.     Shealy registered Dutch Fork as a South Carolina limited liability company with the South Carolina Secretary of State on or about September 1, 2016, as evidenced by the printout from the South Carolina Secretary of State attached as Exhibit 4.

52.     In preparation for his transition to work for competitor Dutch Fork, Shealy negotiated a deal with Coldiron that would allow Coldiron to purchase Shealy's Book of Business as of November 1, 2016, and, as a result, service the Allstate clients that Shealy had been servicing as an Allstate EA.

53.     Shealy told Allstate and Coldiron that he was selling his Book of Business so that he could leave the insurance business and open a brush cutting service and a car wash.

54.     Shealy's statements regarding leaving the insurance business were false, as evidenced by the establishment of Dutch Fork prior to terminating his relationship with Allstate.

55.     Turner, meanwhile, had been working for Shealy as an LSP and was aware of the upcoming transition of the Book of Business to Coldiron.  Turner also knew that part of any sale of a Book of Business is the transfer of customer files from the selling agent to the purchasing agent.

56.     On or about October 21, 2016, Turner entered into a Non-Competition Agreement with Allstate that would enable Turner to transition from Shealy's Exclusive Allstate Agency to Coldiron's Exclusive Allstate Agency. This would allow Turner to maintain access to Allstate confidential information and trade secrets, including personal information about the Allstate

customers he had been helping Shealy service, as well as proprietary details about their policies and rates.

57.     Shealy's relationship with Allstate terminated after October 31, 2016, and Coldiron took over Shealy's Book of Business on November 1, 2016.

58.     Shealy obtained a license for Dutch Fork to begin selling insurance products that were directly competitive with those offered by Coldiron's Exclusive Allstate Agency. (*See* Ex. 3.)

59.     Upon information and belief, Shealy established Dutch Fork's office at 1610 Dutch Fork Road in Irmo, South Carolina, less than two miles from his former Allstate Exclusive Agency, in order to solicit business from the same clients he was servicing as an Allstate EA.

60.     In January 2017, Coldiron began receiving a significant number of cancellation requests from customers. A number of these cancellation requests were received via facsimile and identical in form as if they originated from the same source, as evidenced by the examples attached as Exhibit 5.

61.     While it is normal, and in fact expected, for some customers to decide to take their business elsewhere upon the transition from one Allstate EA to another, the rate at which Coldiron and Allstate were losing business far exceeded the average cancellation rate for new EAs in this territory and is consistent with acts of solicitation.

62.     In late 2016, Turner abruptly left Coldiron's Allstate Exclusive Agency to work for Shealy at Dutch Fork.  Turner then began working for Shealy in early 2017.

63.     Following Turner's departure from Coldiron's Allstate Exclusive Agency, Coldiron discovered that Turner had installed a program on his computer that would allow him to wipe the hard drive of the computer clean, and that Turner had in fact done so.

64.     Upon information and belief, Turner wiped his computer in order to erase evidence that he had deleted or taken certain Allstate confidential information from the computer.

65.     Upon information and belief, Turner brought the Allstate confidential information he had misappropriated to Shealy at Dutch Fork, and Defendants then conspired to use that information to solicit Allstate clients in order to grow Dutch Fork's business.

66.     Allstate is aware of several instances in which customers transferred their business from Allstate to Dutch Fork following Turner's departure.

67.     Meanwhile Shealy has been advertising Dutch Fork as a "new location" for his prior business, and Dutch Fork's website, located at http://insuranceirmo.com, states that the company has been "[i]nsuring Irmo/Chapin clients since 2009," the year Shealy established his Allstate Exclusive Agency. A true and correct printout from this website is attached as Exhibit 6. This conduct is consistent with active solicitation of Allstate clients and attempts to mislead former Allstate clients into thinking it is appropriate for Shealy to solicit them to Dutch Fork.

68.     In addition, Shealy has openly admitted to soliciting certain Allstate clients and has informed Coldiron that he will continue actively soliciting Allstate clients on behalf of Dutch Fork.

69.     Shealy made these statements despite the fact that, pursuant to the terms of the Allstate Agreements, both Shealy and Turner promised: (a) to not use Allstate confidential information for any for any purpose other than to carry out the provisions of their Allstate Agreements; (b) that all confidential information they were provided and had access to through Allstate would at all times remain Allstate property; (c) that they would maintain the confidentiality of Allstate confidential information both during and after their relationships with

Allstate terminated; (d) that they would return all Allstate confidential information and property to Allstate when their relationships with Allstate terminated; and (e) that for a period of one year following termination of their Allstate Agreements, they would not solicit the purchase of products competitive with those sold by Allstate from any customer to whom they sold Allstate products to or whose identity they discovered a result of having access to Allstate confidential information.

70.     Consequently, as of November 1, 2016, Shealy was required to return all Allstate confidential information and property to Allstate, and is precluded from soliciting Allstate customers until November 1, 2017.

71.     Similarly, Turner was required to return all Allstate confidential information and property to Allstate on November 21, 2016, and is precluded from soliciting Allstate customers until November 21, 2017.

72.     Shealy and Turner failed to comply with the above requirements.

73.     Shealy and Turner did not ask for permission to misappropriate Allstate confidential information during their relationships with Allstate or to retain Allstate confidential information after their relationships with Allstate terminated. Similarly, neither Shealy nor Turner informed Allstate that they had retained Allstate confidential information after their relationships with Allstate terminated.

74.     More importantly, neither Shealy nor Turner had the authority to retain Allstate confidential information after their relationships with Allstate terminated.

75.     However, upon information and belief, Shealy and Turner conspired to misappropriate Allstate confidential information while Turner was working for Coldiron, and to

bring that information to Shealy and Dutch Fork in order to solicit Shealy's former Allstate customers to purchase competing insurance products from Dutch Fork.

76.    Due to Defendants' actions, Allstate has continued to lose approximately $50,000 of existing business each month that Dutch Fork has been in operation.

77.    Defendants' misappropriation of Allstate confidential information, failure to immediately return all Allstate confidential information in their possession and/or control, and direct customer solicitation through Dutch Fork directly violates the terms of the Allstate Agreements and other applicable law.

**Allstate's Demand for Return of its Confidential Information**

78.    On February 20, 2017, Allstate sent a letter notifying Shealy that he was in violation of the EA Agreement. Allstate demanded that Shealy immediately stop soliciting Allstate customers and return all Allstate confidential information in his possession, custody or control. A true and correct copy of Allstate's letter is attached as Exhibit 7.

79.    On June 30, 2017, after Coldiron reported receiving continued cancellation requests, (*see, e.g.*, Ex. 5) outside counsel for Allstate wrote to Shealy again, again notifying him of his violations of the EA Agreement and demanding compliance with the agreement. A copy of this letter is attached as Exhibit 8.

80.    On July 6, 2017, outside counsel for Allstate sent Turner a demand letter informing him that he was in violation of the Non-Competition Agreement. Allstate demanded that Turner immediately stop soliciting Allstate customers and return all Allstate confidential information in his possession, custody or control. A true and correct copy of Allstate's demand letter is attached as Exhibit 9.

81.     Shealy replied to the June 30, 2017 letter through counsel. In a letter dated July 7, 2017, attached as Exhibit 10, Shealy's attorney denied any violation of the EA Agreement.

82.     Turner replied to the July 6, 2017 letter through counsel. In a letter dated July 10, 2017, attached as Exhibit 11, Turner's attorney denied any violation of the Non-Competition Agreement.

83.     Unfortunately, Shealy's and Turner's use of Allstate confidential information and solicitation of Allstate customers did not stop.

84.     Consequently, Shealy and Turner are knowingly and intentionally ignoring the duties and obligations they owe Allstate, thus necessitating the filing of the instant lawsuit and request for injunctive relief.

## Irreparable Harm to Allstate

85.     Defendants are harming Allstate's legitimate business interests by illegally misappropriating Allstate's trade secrets, confidential information, and property.

86.     Moreover, Allstate's trade secrets, confidential information, and goodwill are at risk because, upon information and belief, Shealy and Turner are actively using and sharing Allstate confidential information with unauthorized third parties (*i.e.*, Allstate competitor Dutch Fork).

87.     By failing to immediately return Allstate confidential trade secret information and property, Defendants have harmed, and continue to harm, Allstate's legitimate business interests. Defendants are also harming Allstate's legitimate business interests by illegally using Allstate confidential information to solicit Allstate customers.

88.     Furthermore, Allstate relies on its confidential information to service its clients' needs, make sure its clients are satisfied with their respective Allstate products, and sell additional products and services to its clients.

89.     If a competitor, such as Dutch Fork, obtained Allstate confidential information, the competitor would be able to unfairly compete with Allstate. For example, a competitor could use Allstate confidential information to contact Allstate customers and offer those customers competing products and services based upon terms and conditions that undercut Allstate.

90.     Injury to Allstate is ongoing, as Allstate continues to suffer significant financial losses.

91.     Meanwhile, continued injury to Allstate is both probable and imminent because Shealy and Turner clearly intend to continue violating their Allstate Agreements, and to continue improperly using Allstate confidential information on behalf of an Allstate competitor, Dutch Fork.

92.     Finally, Defendants' conduct poses probable and imminent harm to Allstate customers. By continuing to possess, use, and share Allstate confidential information, Defendants can illegally access private customer information (including sensitive policy information containing names, dates of birth, social security numbers) and potentially share this confidential information with third parties (*i.e.* competitors and former employees) who have no right to see or possess such information.

93.     Accordingly, Allstate is suffering irreparable harm and injunctive relief is necessary and appropriate to prevent further damage to Allstate.

## COUNT I
### (Breach of Contract against Shealy)

94.     Allstate repeats and realleges paragraphs 1 through 93 of the Complaint, as if fully set forth herein.

95.     On July 1, 2009, Shealy entered into his EA Agreement with Allstate.

96.     Shealy's EA Agreement is a valid and enforceable contract.

97.     In executing the EA Agreement, Shealy specifically recognized that Allstate confidential information included:

> business plans of [Allstate]; information regarding the names, addresses, and ages of policyholders of [Allstate]; types of policies; amounts of insurance; premium amounts; the renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by [Allstate] as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of [Allstate] that is not otherwise lawfully available to the public.

(Ex. 1 at § IV(D).)

98.     Under the EA Agreement, Shealy promised never to use Allstate confidential information for any purpose other than to carry out the provisions of the EA Agreement, and that all Allstate confidential information to which he had access by virtue of his position as an EA would remain Allstate property.

99.     Shealy also promised, upon termination of the EA Agreement, to treat as confidential and not disclose, either directly or indirectly, Allstate confidential information to any third party.

100.     Shealy further promised to return all Allstate confidential information to Allstate when his EA Agreement terminated on October 31, 2016.

101.    Allstate has performed all of the duties and obligations it owes Shealy under his EA Agreement.

102.    In accordance with Section XVIII(B) of the EA Agreement, Allstate has demanded that Shealy return Allstate confidential information to Allstate. Shealy, however, has not done so.

103.    To the contrary, Shealy has continued to possess and use Allstate confidential information to solicit Allstate clients following termination of the EA Agreement.

104.    Shealy has no right to possess or use Allstate confidential information following termination of the EA Agreement. As a result, he is in breach of his EA Agreement.

105.    In addition, Shealy was prohibited from soliciting customers he serviced for Allstate, and/or Allstate customers whose identities he discovered through access to Allstate confidential information, for a period of one (1) year following termination of the EA Agreement.

106.    Shealy's EA Agreement terminated on October 31, 2016. As such, Shealy was prohibited from soliciting Allstate customers on behalf of Dutch Fork between November 1, 2016 and November 1, 2017.

107.    Yet, Shealy solicited, and continues to solicit, Allstate customers to leave Allstate after his EA Agreement terminated on November 1, 2016.

108.    Thus, Shealy is in breach of the EA Agreement.

109.    Shealy's breaches of his EA Agreement have damaged Allstate's goodwill, reputation, and legitimate business interests.

110.    Allstate is therefore entitled to recover compensatory damages and interest, in an amount to be proven at trial, for Shealy's breaches of his EA Agreement.

111.    Moreover, Shealy's breaches of his EA Agreement are continuing and ongoing, and Allstate is subject to continuing irreparable harm, economic injury, and damage to its goodwill and business reputation.

112.    In addition, Allstate needs its confidential information in order to maintain the business relationships it has developed over many years, protect the relationships it has developed with its customers over many years, protect its policyholders' privacy rights, and maintain the confidentiality of its confidential information.

113.    Allstate has no adequate remedy at law and, unless injunctive relief is granted, Allstate will continue to be irreparably harmed by Shealy in a manner that is not fully compensable by money damages. Injunctive relief is therefore necessary and appropriate in order to prevent further damage to Allstate.

114.    Hence, Allstate requests that this Court grant injunctive relief against Shealy that prohibits Shealy from: (a) using, possessing, or having access to any Allstate confidential information; (b) disclosing Allstate confidential information to anyone not authorized to receive the information; and (c) soliciting Allstate customers until after November 1, 2017.

115.    Allstate also requests that this Court order Shealy to immediately turn over all Allstate confidential information still in his possession, custody, or control to Allstate.

116.    Finally, Allstate is entitled to recover the attorneys' fees and expenses it incurs as a result of Shealy's breach of the EA Agreement.

## COUNT II
### (Breach of Contract against Turner)

117.    Allstate repeats and realleges paragraphs 1 through 116 of the Complaint, as if fully set forth herein.

118.    On October 21, 2016, Turner entered into his Non-Competition Agreement with Allstate.

119.    Turner's Non-Competition Agreement is a valid and enforceable contract.

120.    In executing the Non-Competition Agreement, Turner specifically recognized that Allstate confidential information included:

> business plans of [Allstate]; information regarding the names, addresses, and ages of policyholders or prospective policyholders of [Allstate]; types of polices; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of [Allstate] that is not otherwise lawfully available to the public.

(Ex. 2 at ¶ 3.)

121.    Under the Non-Competition Agreement, Turner promised never to use Allstate confidential information for any purpose other than to carry out the provisions of the Non-Competition Agreement, and that all Allstate confidential information which he had access to by virtue of his position as an LSP would remain Allstate property.

122.    Turner also promised, upon termination of the Non-Competition Agreement, to treat as confidential and not disclose, either directly or indirectly, Allstate confidential information to any third party.

123.    Turner further promised to return all Allstate confidential information to Allstate when his Non-Competition Agreement terminated on November 21, 2016.

124.    Allstate has performed all of the duties and obligations it owes Turner under the Non-Competition Agreement.

125.    In accordance with Section 5 of the Non-Competition Agreement, Allstate has demanded that Turner return Allstate confidential information to Allstate. Turner, however, has not done so.

126.    To the contrary, Turner has continued to possess and use Allstate confidential information to solicit Allstate clients following termination of the Non-Competition Agreement.

127.    Turner has no right to possess or use Allstate confidential information following termination of the Non-Competition Agreement. As a result, Turner is in breach of his Non-Competition Agreement.

128.    In addition, Turner was prohibited from soliciting customers he serviced for Allstate, and/or Allstate customers whose identities he discovered through access to Allstate confidential information, for a period of one (1) year following termination of the Non-Competition Agreement.

129.    Turner's Non-Competition Agreement terminated on November 21, 2016. As such, Turner was prohibited from soliciting Allstate customers on behalf of Dutch Fork until November 21, 2017.

130.    Yet, Turner solicited, and continues to solicit, Allstate customers to leave Allstate after November 21, 2016.

131.    Thus, Turner is in breach of the Non-Competition Agreement.

132.    Turner's breaches of the Non-Competition Agreement have damaged Allstate's goodwill, reputation, and legitimate business interests.

133.    Allstate is therefore entitled to recover compensatory damages and interest, in an amount to be proven at trial, for Turner's breaches of the Non-Competition Agreement.

134.    Moreover, Turner's breaches of the Non-Competition Agreement are continuing and ongoing, and Allstate is subject to continuing irreparable harm, economic injury, and damage to its goodwill and business reputation.

135.    In addition, Allstate needs its confidential information in order to maintain the business relationships it has developed over many years, protect the relationships it has developed with its customers over many years, protect its policyholders' privacy rights, and maintain the confidentiality of its confidential information.

136.    Allstate has no adequate remedy at law and, unless injunctive relief is granted, Allstate will continue to be irreparably harmed by Turner in a manner that is not fully compensable by money damages. Injunctive relief is therefore necessary and appropriate in order to prevent further damage to Allstate.

137.    Hence, Allstate requests that this Court grant injunctive relief against Turner that prohibits Turner from: (a) using, possessing, or having access to any Allstate confidential information; (b) disclosing Allstate confidential information to anyone not authorized to receive the information; and (c) soliciting Allstate customers until after November 21, 2017.

138.    Allstate also requests that this Court order Turner to immediately turn over all Allstate confidential information still in his possession, custody, or control to Allstate.

139.    Finally, Allstate is entitled to recover the attorneys' fees and expenses it incurs as a result of Turner's breach of the Non-Competition Agreement.

### COUNT III
**(Misappropriation of Trade Secrets in Violation of the South Carolina Trade Secrets Act, S.C. Code §§ 39-8-1 *et seq.*, against Shealy, Turner, and Dutch Fork)**

140.    Allstate repeats and realleges paragraphs 1 through 139 of the Complaint, as if fully set forth herein.

141.    During the course of their relationships with Allstate, Shealy and Turner were exposed to substantial amounts of Allstate trade secrets and confidential information, including the confidential information identified in Paragraphs 32, 41, and 42 above.

142.    For example, both Shealy and Turner were provided access to:  Allstate business plans; information regarding the names, addresses, and ages of policyholders or prospective policyholders of Allstate; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings; policyholder information that is subject to privacy law; claim information; customer contact information; customer account numbers; and customer account values.

143.    This information is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential in order to protect its customers' privacy and in order to maintain a competitive advantage in the highly competitive insurance business.

144.    This information is considered a trade secret under the South Carolina Trade Secrets Act ("SCTSA"), S.C. Code § 39-8-1 *et seq.*, because Allstate derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

145.    Under the SCTSA, a "person aggrieved by misappropriation, wrongful disclosure, or wrongful use of his trade secrets may bring a civil action to recover damages incurred as a result of the wrongful acts and to enjoin its appropriation, disclosure, use, or wrongful acts pertaining to the trade secrets." S.C. Code § 39-8-30(b).

146.    Defendants misappropriated Allstate's trade secrets in violation of South Carolina law by conspiring to have Turner remove Allstate confidential information from his computer at Coldiron's Allstate Exclusive Agency, actually removing and retaining the information, and disclosing it to Shealy and Dutch Fork in order to use the information to solicit Allstate customers for Dutch Fork.

147.    Upon termination of their Allstate Agreements, Shealy and Turner were required to return Allstate confidential information to Allstate, but have refused to do so and, upon information and belief, still retain certain Allstate confidential information in their possession and/or control for use by and on behalf of Dutch Fork.

148.    Unless restrained, Defendants will use, divulge, disclose, and/or otherwise misappropriate Allstate confidential information. Indeed, upon information and belief, Shealy and Turner have already disclosed Allstate confidential information and trade secrets to Dutch Fork, a direct competitor of Allstate.

149.    The Defendants, acting in concert, have used and are continuing to use Allstate confidential information in order to unfairly compete with Allstate.

150.    Defendants' continued possession and use of Allstate confidential information demonstrates that Shealy and Turner have no intention of complying with the terms of their Allstate Agreements or the law, and that Dutch Fork will continue to facilitate Shealy's and Turner's knowing theft and misuse of Allstate confidential information.

151.    Naturally then, Allstate requests an order enjoining Defendants from using any Allstate confidential information, and from disclosing Allstate confidential information to anyone not authorized to receive the confidential information.

152.    Allstate also requests an order requiring Defendants to return any and all Allstate confidential information still in Defendants' possession, custody, and/or control to Allstate.

153.    Finally, Defendants' misappropriation of Allstate confidential information has been willful and malicious, and Allstate has incurred significant damages as a result of Defendants' misappropriation of Allstate confidential information.

154.    Defendants' actions have damaged Allstate's goodwill, reputation, and legitimate business interests.

155.    Allstate is therefore entitled to an award of its compensatory damages, as well as exemplary damages under S.C. Code § 39-8-40, and its attorneys' fees under S.C. Code § 39-8-80.

## COUNT IV
### (Violation of the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*, against Defendants)

156.    Allstate repeats and realleges Paragraphs 1 through 155 of the Complaint, as if fully set forth herein.

157.    During the course of their relationships with Allstate, Shealy and Turner were provided access to substantial amounts of Allstate confidential information, including the confidential information identified in Paragraphs 32, 41, and 42 above.

158.    Allstate confidential information is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

159.    Allstate confidential information is considered a "trade secret" under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.* ("DTSA"), because the information is not generally known outside of Allstate's business, the information is not generally known by

employees and others involved in Allstate's business, Allstate has taken reasonable measures to guard the secrecy of the information, the information is of great value to Allstate and its competitors, Allstate invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because Allstate continuously uses the information in its business.

160.    Upon termination of their Allstate Agreements, Shealy and Turner were required to return Allstate confidential information to Allstate, but have refused to do so and, upon information and belief, still retain certain Allstate confidential information in their possession and/or control for use by and on behalf of Dutch Fork.

161.    Unless restrained, Defendants will use, divulge and/or otherwise misappropriate Allstate confidential information. Indeed, upon information and belief, Shealy and Turner have already disclosed Allstate confidential information and trade secrets to Dutch Fork, a direct competitor of Allstate.

162.    The Defendants, acting in concert, have used and are continuing to use Allstate confidential information in order to unfairly compete with Allstate.

163.    Defendants' continued possession and use of Allstate confidential information demonstrates that Shealy and Turner have no intention of complying with the terms of their Allstate Agreements or the law, and that Dutch Fork will continue to facilitate Shealy's and Turner's knowing theft and misuse of Allstate confidential information.

164.    Naturally then, Allstate requests an order enjoining Defendants from using any Allstate confidential information, and from disclosing Allstate confidential information to anyone not authorized to receive the confidential information.

165.     Allstate also requests an order requiring Defendants to return any and all Allstate confidential information still in their possession and/or control to Allstate.

166.     Finally, Defendants' misappropriation of Allstate confidential information has been willful and malicious, and Allstate has incurred significant damages as a result of Defendants' misappropriation of Allstate confidential information.

167.     Defendants' actions have damaged Allstate's goodwill, reputation, and legitimate business interests.

168.     Allstate is therefore entitled to compensatory and exemplary damages in an amount to be proven at trial, as well as reasonable attorneys' fees.

## COUNT V
**(Violation of the South Carolina Unfair Trade Practices Act, S.C. Stat. §§ 39-5-10 *et seq.*, against Shealy, Turner, and Dutch Fork)**

169.     Allstate repeats and realleges paragraphs 1 through 168 of the Complaint, as if fully set forth herein.

170.     During the course of their relationships with Allstate, Shealy and Turner were provided access to substantial amounts of Allstate confidential information, including the confidential information identified in Paragraphs 32, 41, and 42 above.

171.     Allstate confidential information is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential in order to maintain an advantage over competitors like Dutch Fork.

172.     Shealy and Turner have provided Allstate confidential information to Dutch Fork and are now acting in concert with Dutch Fork to use Allstate confidential information to solicit Allstate customers.

173.    By using Allstate confidential information to solicit Allstate customers, Defendants have used, and are continuing to use, an unfair method of competition in conducting commerce that affects the people of South Carolina in violation of S.C. § 39-5-20.

174.    Defendants' unfair trade practices have damaged Allstate both in terms of lost customers and irreparable harm to the value of Allstate confidential information and goodwill.

175.    Defendants' unfair trade practices also harm the public interest because they prevent free competition in the marketplace for insurance, prevent consumers from being fully aware of their choices in the marketplace as to insurance, interfere with valuable contractual relations in violation of the public policy of the State of South Carolina, and are likely to be repeated.

176.    Allstate is entitled to injunctive relief pursuant to S.C. Stat. § 39-5-50 because Defendants' activities are ongoing, and are likely to continue causing harm to Allstate by way of further damage to the value of Allstate confidential information.

177.    Because Defendants' actions have been willful and knowing, Allstate is also entitled to an award of treble damages and attorneys' fees pursuant to S.C. Stat. § 39-5-140.

## COUNT VI
### (Tortious Interference with Contract against Dutch Fork)

178.    Allstate repeats and realleges paragraphs 1 through 177 of the Complaint as if fully set forth herein.

179.    Allstate entered into an EA Agreement with Shealy in consideration of Shealy's promise to protect Allstate confidential information and customer relationships.

180.    The EA Agreement is a valid and enforceable contract.

181.    Allstate entered into a Non-Competition Agreement with Turner in consideration of Turner's promise to protect Allstate confidential information and customer relationships.

182.    The Non-Competition Agreement is a valid and enforceable contract.

183.    Dutch Fork, which is owned and operated by Shealy, has actual knowledge of the EA Agreement between Shealy and Allstate, as well as the Non-Competition Agreement between Turner and Allstate.

184.    Despite Dutch Fork's knowledge of Shealy's and Turner's obligations under the Allstate Agreements, including but not limited to the protection and return of Allstate confidential information, Dutch Fork intentionally induced Shealy and Turner to breach the Allstate Agreements.

185.    Dutch Fork has no legitimate business interest or other justification to induce Shealy and Turner to breach their Allstate Agreements.

186.    Dutch Fork's actions have resulted in significant damage to the legitimate business interests of Allstate.

187.    Allstate is therefore entitled to recover compensatory damages and interest, in an amount to be proven at trial, resulting from Dutch Fork's tortious interference with its contractual relationships with Shealy and Turner.

WHEREFORE, Plaintiff Allstate Insurance Company respectfully requests that this Court:

a.    Enter an injunction enjoining and restraining Defendants, and their agents, representatives, servants, employees, and all those acting in concert or participation with them, from using, possessing, disclosing, or having access to any Allstate confidential information;

b.    Enter an order requiring Defendants to return all Allstate confidential information and property in their possession, custody or control to Allstate;

c.      Enter an injunction enjoining and restraining Shealy, and anyone acting in concert or participation with him, from directly or indirectly soliciting Allstate customers until after November 1, 2017;

d.      Enter an injunction enjoining and restraining Turner, and anyone acting in concert or participation with him, from directly or indirectly soliciting Allstate customers until after November 21, 2017;

e.      Enter judgment against Defendants for compensatory damages in an amount to be determined at trial;

f.      Enter judgment against Defendants for exemplary damages in an amount to be determined at trial;

g.      Award Allstate the costs and expenses, including the reasonable attorneys' fees, Allstate incurs as a result of Shealy's and Turner's breaches of their Allstate Agreements, Defendants' misappropriation of Allstate trade secrets pursuant to South Carolina law and the federal Defend Trade Secrets Act, and Dutch Fork's tortious interference with Allstate's advantageous contractual relationships; and

h.      Award Allstate such other relief as the Court may deem just and proper.


Respectfully submitted,

GAFFNEY LEWIS & EDWARDS, LLC

*s/ Lee Ellen Bagley*
Lee Ellen Bagley, USDC ID No. 11453
lebagley@glelawfirm.com
Nashiba Boyd, USDC ID No. 11408
nboyd@glelawfirm.com
3700 Forest Drive, Suite 400
Columbia, South Carolina 29204
TEL: (803) 790-8838

SEYFARTH SHAW LLP

J. Scott Humphrey*
Illinois State Bar No. 6239169
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
TEL: (312) 460-5000
FAX:  (312) 460-7000
E-Mail:  shumphrey@seyfarth.com

Lauren M. Gregory*
Georgia State Bar No. 729061
1075 Peachtree Street NE, Suite 2500
Atlanta, Georgia 30309
TEL: (404) 885-1500
FAX: (404) 892-7056
E-Mail: lgregory@seyfarth.com

*seeking admission pro hac vice

Counsel for Plaintiff Allstate Insurance Company

Dated: September 19, 2017